IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| ARTHUR CARSON, § | | |
| Plaintiff, § | | |
| § | | |
| v. § | 3:10-CV-1523-G-BK | |
| § | | |
| OFFICER KELLY, et al., § | | |
| Defendants. § | | |

**FINDINGS, CONCLUSIONS AND RECOMMENDATION
OF THE UNITED STATES MAGISTRATE JUDGE**

Pursuant to the provisions of 28 U.S.C. § 636(b) and *Special Order* 3, this case was referred for pretrial management. The cause is now before the Court on the City of Dallas's *Motion to Dismiss Plaintiff's Complaint Pursuant to Rule 12(b)(6)*, (Doc. 21), and Officer Kelly's *Motion to Dismiss Plaintiff's Complaint Pursuant to Rule 12(b)(6)*, (Doc. 25). For the reasons stated herein, the motions should be **GRANTED**.

**I. BACKGROUND**

Plaintiff filed a *pro se*, civil rights complaint under 42 U.S.C. §§ 1983, 1988, against Dallas Police Officer Kelly and the Dallas Police Department, arising out of Defendants' alleged violation of Plaintiff's rights under the Equal Protection Clause of the Constitution.[1] (Doc. 1 at 1). Plaintiff claims that, based on his race and gender, Officer Kelly refused to investigate Plaintiff's assault as well as damage done to his car by a female acquaintance, Evelyn Moore ("Evelyn"). (*Id.* at 1-3). He alleges that in June 2010, he went to visit Ruben Moore, who had

---

[1] Plaintiff subsequently named the City of Dallas in lieu of the Dallas Police Department. (Doc. 8 at 4).

been assaulted the evening before by his estranged wife, Eveyln. (Doc. 8 at 2.) Shortly after his arrival, Plaintiff saw Evelyn come from the backyard with a stick in her hand, and she began to curse at him. (*Id.*). After exchanging a few words, Evelyn approached Plaintiff and hit him in the face with the stick. (*Id.*). Plaintiff threw her to the ground and removed the stick from her hand, after which Evelyn broke Plaintiff's car windshield with a hammer. (*Id.*). Plaintiff called 911 and two white officers responded, including Officer Kelly.

Plaintiff alleges that Officer Kelly was "rude and [i]nattentive to the situation," failed to take Plaintiff's complaint seriously, ignored witness statements, and refused to arrest Evelyn despite her two previous assaults on Ruben Moore as well as the assault on Plaintiff. (*Id.* at 3-5; Doc. 15 at 2). According to Plaintiff, "Officer Kelly followed the practice, policy, or custom in not caring about African-American victims, and ignoring the enforcement of the Law, in regards to protecting African-American males." (Doc. 15 at 3). He also alleged that the Dallas Police Department had a custom of not enforcing the law, but he needed discovery to establish the nature of the policy. (*Id.* at 5). Plaintiff stated that he also wished to raise state law tort claims, but could not identify such claims absent discovery. (*Id.* at 5-6). He sought monetary damages as well as declaratory and injunctive relief to the effect that the "current practices, policies, actions are unconstitutional." (Doc. 8 at 5-6). Both Defendants now move to dismiss Plaintiff's complaint pursuant to FED. R. CIV. P. 12(b)(6). (Docs. 21, 25).

## II. ARGUMENTS AND ANALYSIS

A plaintiff fails to state a claim for relief under Rule 12(b)(6) when the complaint does not contain "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly,* 550 U.S. 544*,* 570 (2007). In order to overcome a Rule 12(b)(6) motion, a plaintiff's

complaint should "contain either direct allegations on every material point necessary to sustain a recovery … or contain allegations from which an inference may fairly be drawn that evidence on these material points will be introduced at trial." *Campbell v. City of San Antonio,* 43 F.3d 973, 975 (5th Cir. 1995) (quotation omitted). Moreover, the complaint should not simply contain conclusory allegations, but must be pled with a certain level of factual specificity, and the district court cannot "accept as true conclusory allegations or unwarranted deductions of fact." *Collins v. Morgan Stanley Dean Witter,* 224 F.3d 496, 498 (5th Cir. 2000) (quotation omitted). The standard set forth in Rule 8 of the Federal Rules of Civil Procedure "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1949 (2009). A complaint thus is not sufficient if it merely contains "naked assertions" devoid of factual enhancement. *Id.*

    A.    <u>Claim Pursuant to Section 1988</u>

Although Plaintiff claims that he is seeking relief pursuant to 42 U.S.C. section 1988, that statute does not give rise to a private cause of action. *Moor v. County of Alameda*, 411 U.S. 693, 703-04 & n.17 (1973). That section simply defines the procedures under which remedies may otherwise be sought in civil rights actions. *Id.* Further, section 1988 authorizes the award of attorneys' fees in the discretion of the court. *See White v. New Hampshire Dept. of Employment Sec.*, 455 U.S. 445, 454 (1982). Accordingly, Plaintiff's claims brought under section 1988 should be dismissed.

    B.    <u>Equal Protection Claim</u>

Officer Kelly argues, in support of dismissal, that Plaintiff does not allege sufficient facts to show that Kelly treated similarly-situated, non-African American males, who were the victims

of female assaults, differently than he treated Plaintiff. (Doc. 25 at 6-7). Further, Officer Kelly maintains, Plaintiff did not allege any facts to suggest that Kelly's conduct was motivated by Plaintiff's race or gender or that Kelly had a discriminatory state of mind during his interactions with Plaintiff. (*Id.* at 7-8).

Officer Kelly also urges the Court to dismiss Plaintiff's requests for declaratory and injunctive relief because he does not specify the type of injunctive relief he seeks, and his request for a declaration that the City's policies are unconstitutional is superfluous. (*Id.* at 8-9). Finally, Officer Kelly maintains that to the extent Plaintiff seeks to raise any state law claims, he has not alleged them with specificity. (*Id.* at 8).

Plaintiff's response to Officer Kelly's Rule 12(b)(6) motion does not address his claims against Officer Kelly or Kelly's arguments in support of dismissal. (*See generally* Doc. 27).

The Equal Protection Clause requires that similarly-situated persons be treated alike. *City of Cleburne, Texas v. Cleburne Living Center, Inc.*, 473 U.S. 432, 439 (1985). To state a claim of racial discrimination under the Equal Protection Clause, a plaintiff must allege that he was treated differently than other similarly-situated individuals and that the unequal treatment stemmed from a discriminatory purpose. *Priester v. Lowndes County,* 354 F.3d 414, 424 (5th Cir. 2004). A discriminatory purpose "implies that the decision maker singled out a particular group for disparate treatment and selected his course of action at least in part for the purpose of causing its adverse effect on an identifiable group." *Taylor v. Johnson,* 257 F.3d 470, 473 (5th Cir. 2001).

Plaintiff's pleadings, even when liberally construed in light of his *pro se* status, fail to allege that Officer Kelly treated him differently than other similarly-situated individuals. *See*

4

*Johnson v. Rodriguez*, 110 F.3d 299, 309 (5th Cir. 1997) (quoted case omitted) (equal protection violation "'occurs only when, *inter alia*, the governmental action in question classifies between two or more relevant persons or groups'"). While Plaintiff identifies two other incidents when Evelyn allegedly assaulted Ruben Moore in domestic disturbances and the Dallas Police Department took no action, he fails to allege how those incidents were similar to the non-domestic assault in which he was involved. (Doc. 15 at 2).

In addition, Plaintiff fails to identify any similarly-situated individuals who were not African-Americans who were treated more favorably by Officer Kelly and/or the Dallas Police Department. (*Id.* at 3). He states merely that "[h]ad a[n] African [sic] male assaulted anyone . . . jail would have been the outcome of the assault, and property damage." (*Id.* at 3). His conclusion is based on a "life-time observation of the Dallas Police Department [and its] treatment of African-American crime victims as opposed to white Americans." (*Id.*). However, he presents nothing more than general, conclusory allegations based on his own personal impressions, which is inadequate to survive a motion to dismiss. *Iqbal*, 129 S.Ct. at 1949; *Collins*, 224 F.3d at 498; *see Pedraza v. Meyer,* 919 F.2d 317, 318 n.1 (5th Cir. 1990) (holding that vague and conclusory allegations that one's equal protection rights have been violated are insufficient to raise an equal protection claim).

Nor does Plaintiff sufficiently allege that the unequal treatment he suffered stemmed from Officer Kelly's intentionally discriminatory purpose. *Priester,* 354 F.3d at 424. Apart from his general allegations of racial discrimination, his pleadings focus only on Officer Kelly's failure to take Plaintiff's complaint seriously and refusal to arrest Evelyn. This, however, is not sufficient to adequately plead Officer Kelly's discriminatory state of mind because Plaintiff did not allege

5

any plausible facts showing that Officer Kelly singled Plaintiff out specifically based on his gender and race. *See Iqbal*, 129 S. Ct. at 1952 (dismissal appropriate where complaint failed to "contain any factual allegation sufficient to plausibly suggest [defendants'] discriminatory state of mind"). Therefore, Plaintiff fails to state a claim for an equal protection violation under section 1983, and his claim against Officer Kelly should be dismissed.

C. City of Dallas

The City contends that it is entitled to dismissal of the claims against it because Plaintiff has only pleaded in conclusory fashion that the Dallas Police Department has a custom or policy of discriminating against African-American males who are the victimized by women. (Doc. 21 at 8). The City maintains that the domestic dispute between Evelyn and her estranged husband is different in kind from the non-domestic assault involving Evelyn and Plaintiff, and therefore does not demonstrate a custom or policy by the City to discriminate against African-American male victims of assault by women. (*Id.*). Because Plaintiff thus has alleged only one incident of alleged discrimination, the City contends that he cannot show a discriminatory policy or custom. (*Id.* at 8-9). Further, the City argues that Plaintiff has failed to plead (1) the identity of the City's final policymaker or facts that would show that the City's policymakers had knowledge of the alleged custom; and (2) that the City's custom was the moving force and actual cause of the violation of Plaintiff's constitutional rights. (*Id.* at 9-10).

Plaintiff responds that the Court should take judicial notice of the number of excessive force cases relating to African-American males by the Dallas Police Department and the conviction ratio for African-American males, both as compared to the overall population. (Doc. 27 at 2). Plaintiff maintains that he needs to conduct discovery because statistical data is

essential to prove his case, and he attaches to his response two articles in support of his belief that the police discriminate against African-American males. (*Id.* at 2, 4-7).

In reply, the City objects to the inclusion of the documents because they are outside the scope of the pleadings and contends that the Court should not consider them in ruling on its *Motion to Dismiss*. (Doc. 30 at 2-3). Further, the City argues that the Court should not take judicial notice of the facts requested by Plaintiff because his allegations are subject to dispute and not capable of accurate determination by unquestionable sources. (*Id.* at 3). Last, the City contends that discovery is not warranted until Plaintiff states a viable claim, which he has not done. (*Id.* at 4-5).

Municipalities and other local government entities are "persons" within the scope of section 1983. *Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658, 690 (1978). "It is only when the 'execution of the government's policy or custom . . . inflicts the injury' that the municipality may be held liable." *City of Canton v. Harris*, 489 U.S. 378, 385 (1989). To impose section 1983 liability on a municipality, a plaintiff must show that: (1) his constitutional rights were violated; (2) the municipality had a custom or policy; and (3) the custom or policy was the moving force behind the violation. *Piotrowski v. City of Houston*, 237 F.3d 567, 578 (5th Cir. 2001). The unconstitutional acts complained of must be attributable directly to the municipal entity through some sort of official action or imprimatur. *Id.* If an act is performed pursuant to a custom that has not formally been approved by a policymaker, a municipality is subject to section 1983 liability only if the custom is so widespread as to have the force of law. *Bd. of County Comm'rs of Bryan County, Oklahoma v. Brown*, 520 U.S. 397, 404 (1997). A county does not incur section 1983 liability for injuries caused solely by its employees and

cannot be held liable under section 1983 on a *respondeat superior* theory. *Monell,* 436 U.S. at 691, 694. An isolated unconstitutional act by a city employee can almost never trigger section 1983 liability. *Piotrowski*, 237 F.3d at 578.

As the City correctly notes, Plaintiff has only pleaded in conclusory fashion that the Dallas Police Department has a custom or policy of discriminating against African-American males who are the victimized by women. Plaintiff seemingly concedes this point, as he noted in his complaint that he needs discovery to determine the nature of the City's policy. (Doc. 15 at 5). However, he must first allege sufficient facts to avoid dismissal of his complaint under Rule 12(b)(6), and he has not done so here given his conclusory allegations. *See, e.g., Iqbal*, 129 S.Ct. at 1954 (noting that because plaintiff's complaint was insufficient to survive dismissal under Rule 12(b)(6) on qualified immunity grounds, he was not entitled to discovery). Further, the Court cannot consider the articles that Plaintiff attached to his Rule 12(b)(6) response as supporting evidence in his behalf. *See* FED. R. CIV. P. 12(d) (requiring that, if matters outside the pleadings are presented with a Rule 12(b)(6) or Rule 12(c) motion, the court must convert the dismissal motion into a motion for summary judgment).

Second, Plaintiff has not sufficiently alleged that the City had an official custom or policy that was the moving force behind any alleged equal protection violation or that the purported custom was so widespread as to have the force of law. *Bryan County*, 520 U.S. at 404; *Piotrowski*, 237 F.3d at 578. The Court cannot take judicial notice of any such policies or customs that Plaintiff claims the City has, because the purported facts do not fall within the ambit of those recognizable under FED. R. EVID. 201. *See* FED. R. EVID. 201(b) (providing that a court may take judicial notice of an "adjudicative fact" if the fact is "not subject to reasonable dispute

8

in that it is either (1) generally known within the territorial jurisdiction of the trial court, or (2) capable of accurate and ready determination by resort to sources whose accuracy cannot be questioned.). Finally, any allegedly unconstitutional acts by Officer Kelly were isolated acts by an employee for which the City cannot be held liable on a *respondeat superior* theory. *Monell*, 436 U.S. at 691, 694; *Piotrowski*, 237 F.3d at 578. Thus, Plaintiff's claims against the City also should be dismissed pursuant to Rule 12(b)(6).

D.   Injunctive and Declaratory Relief

Finally, in his complaint, Plaintiff requested declaratory and injunctive relief to the effect that the "current practices, policies, actions are unconstitutional." (Doc. 8 at 5-6). Plaintiff's request for declaratory relief should be dismissed because, as noted above, he has not sufficiently stated a claim that the City of Dallas had an unconstitutional policy or custom which led to the violation of his equal protection rights.

In order to be entitled to injunctive relief, Plaintiff must demonstrate that (1) he has a substantial likelihood of success on the merits; (2) a substantial threat of irreparable injury will occur absent issuance of the injunction; (3) the threatened injury outweighs the potential damage the requested injunction may cause the non-movant; and (4) the injunction would not be adverse to the public interest. *Mississippi Power & Light Co. v. United Gas Pipe Line Co.*, 760 F.2d 618, 621 (5th Cir. 1985). "A preliminary injunction is an extraordinary and drastic remedy which should not be granted unless the movant has clearly established the burden of persuasion of . . . the four prerequisites to such relief." *State of Texas v. Seatrain Int'l*, 518 F.2d 175, 179 (5th Cir. 1975). In this case, Plaintiff's request for an injunction should be dismissed because he has not even specified the nature of the injunctive relief he seeks and thus has not carried his burden of

demonstrating the requisites for injunctive relief. *Id.*

## III.  RECOMMENDATION

For the reasons set forth above, the Court should **GRANT** the City of Dallas's *Motion to Dismiss Plaintiff's Complaint Pursuant to Rule 12(b)(6)*, (Doc. 21) and **GRANT** Officer Kelly's *Motion to Dismiss Plaintiff's Complaint Pursuant to Rule 12(b)(6)*, (Doc. 25).

**SO RECOMMENDED** on June 24, 2011.

RENÉE HARRIS TOLIVER
UNITED STATES MAGISTRATE JUDGE

**INSTRUCTIONS FOR SERVICE AND**
**NOTICE OF RIGHT TO APPEAL/OBJECT**

A copy of this report and recommendation shall be served on all parties in the manner provided by law. Any party who objects to any part of this report and recommendation must file specific written objections within 14 days after being served with a copy. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b). In order to be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the magistrate judge's report and recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific. Failure to file specific written objections will bar the aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge that are accepted or adopted by the district court, except upon grounds of plain error. *See Douglass v. United Services Automobile Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996).

RENÉE HARRIS TOLIVER
UNITED STATES MAGISTRATE JUDGE